IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

FELIPE DE JESUS LOPEZ #634125 §

v. § CIVIL ACTION NO. 9:07cv308

NURSE D. WIGLY, ET AL. §

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Felipe Lopez, proceeding *pro se*, filed this civil rights action under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Lopez named Nurse Wigly, Warden Currie, Warden Dawson, and an individual named Moore whom he identifies as a nurse; however, the medical records indicate that this may be a physician's assistant named Fred Moore.

An evidentiary hearing was conducted in this case, at which Lopez testified that he was at the Gib Lewis Unit on January 18, 2007. He says that the medical staff thought that he refused medical care, but in fact he did not. Lopez says that he thought that he had a disease because he had "mucus in his stool," and that he has a refusal form that bears his number, but the name of another inmate, Julio Lopez. He says that he had to file grievances to get a copy of this form, which is dated December 11, 2006.

Meanwhile, Lopez said, he was trying to get medical care for his internal problems. He talked to a doctor who gave him medication and told him that he had "stomach pressure." He stated that the doctor gave him medication for cholesterol and high blood pressure, and told him to "try this and see if it works."

Lopez stated that he has a letter from Nurse Wigly which said that he, Lopez, had filed a sick call request in November of 2006 but then refused a test on December 11, 2006, which Lopez says is not true. He says that Moore got the refusal form signed in error.

On another occasion, Lopez says, he was waiting for sick call and Moore told him that he was taking another inmate's medication, and had him sent back to his cell. Lopez stated that he could not remember when this occurred, but acknowledged that he filed another sick call request and did get seen by the doctor. Lopez says that the "medication" which he was taking was "just stuff he bought at the commissary," and speculated that Moore was retaliating at him because he had filed grievances. He says that he was having problems in the last couple of months seeing the doctor, and so he "tricked" the medical staff by asking for a "follow-up" appointment, so he finally got to see the doctor.

Next, Lopez said that he thought people were "putting things into his food" to harass him. On May 28, 2008, he got a food tray and his neighbor told him to "watch out." He ate the food and an inmate named Rodriguez began to yell that Cell 129, Lopez's cell, is "sucking his dick." Lopez felt sick later and asked for medical care, but did not get any. The next day, he "jacked the rec yard," apparently meaning that he refused to exit from the recreation yard, and was told to file a sick call request, which he did, but he did not get medical care for 60 days.

Lopez speculated that Rodriguez had persuaded an officer named Ross to put something in his food, or that Ross had allowed Rodriguez to do so. He says that the tray was put on Rodriguez's tray slot and then given to him.

Nurse Thomas Maciel, a prison correctional nurse who was also present at the evidentiary hearing, testified under oath concerning the contents of Lopez's medical records. Nurse Maciel said that Lopez filed a sick call request on November 29, 2006, asking for an AIDS and celiac test, and was told he would be referred. On December 11, 2006, there is a refusal of treatment form which says that Lopez refused, and Moore said not to reschedule. After re-checking the form, Nurse Maciel said that the name on it was Julio Lopez.

On December 26, 2006, Maciel said, the medical records show that Lopez was supposedly on a hunger strike concerning a complaint with security. On December 28, he saw Dr. Barrows with a complaint of constipation and GERD (acid reflux disease). The doctor noted that Lopez had gained weight, which would be unlike celiac disease, and prescribed various medications for him. On January 2, 2007, the medical records show that Lopez said that he had been eating and was "fine."

Maciel said that it was possible that a mistake had been made about the name on the form but that this was not policy. Lopez stated that there was now something wrong with his eyes, which had never been the case before, and said that he wanted to be housed on another unit. He said that the mailroom clerks were interfering with mail and "putting drugs in it." Lopez testified that he thought that he had "celiac disease," but that he had been tested for this and told that he does not have it. Nonetheless, he says that he still has mucus in his stool, bloating, and gas.

Lopez's Medical Records

The Court has received and reviewed a certified, authenticated copy of Lopez's medical records. These records contain a refusal of treatment form, bearing the name of Julio Lopez, dated December 11, 2006, refusing a test for celiac disease. On December 26, 2006, Lopez stated that he was starting a hunger strike, saying that it "had something to do with the captain," but a few days later, he was eating again and said that he was "fine." He was seen by the mental health department and told them that he was eating again, denying suicidal ideations.

Lopez did not file a sick call request again until August of 2007, at which time he requested a celiac test, saying that he did not want a blood test but a biopsy of the lower intestine. He also complained about heavy mucus in his throat and was seen for this complaint; at this time, Lopez said that he "got some chlorpen on the run," and was told that he was not to take anyone else's medications and that he should be careful in obtaining medication this way, to which he voiced understanding.

In December of 2007, he was seen by Dr. Behrns, complaining of constipation, gas, occasional diarrhea, and GERD. Lopez stated that he thinks he has celiac disease, but Dr. Behrns noted that Lopez was 21 pounds heaver than he had been in March of 2006, and that he would expect to see weight loss with celiac disease. Lopez was counseled about his weight and blood pressure, and was prescribed medications called ranitidine, surfak, and mylicon.[1] Medical records show that Lopez is being treated for high blood pressure and hyperlipidemia, which is an elevation of lipids (fat, including cholesterol) in the blood. In March of 2008, the medical records show that Lopez was taking ranitidine, mylicon, and pravastatin, a medication to reduce cholesterol.

### Legal Standards and Analysis

The primary claim raised in Lopez's complaint concerns his medical care. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

---

[1] Ranitidine (Zantac) is a medication which reduces the production of stomach acid and thus aids in treating GERD, which is acid reflux disease. Surfak is a stool softener which aids in the treatment of constipation. Mylicon is used to reduce the pressure caused by excess gas in the stomach. *See* http://www.drugs.com.

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Lopez complained of stomach symptoms, including acid, gas, and constipation, and was treated with medication for each of these complaints. He has not shown that the prison medical personnel refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct.

The fact that he thought that he had celiac disease does not give rise to any constitutional claims. The Eighth Circuit has explained that a prisoner's self-diagnosis alone will not support a medical conclusion. Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994); see also Aswegan v. Henry, 49 F.3d 461, 465 (8th Cir. 1995) (prisoner's bare assertion of a serious medical condition is insufficient without medical evidence verifying that the condition exists).

In this case, Lopez was seen by Dr. Behrns, who concluded that it was unlikely that Lopez had celiac disease because he had experienced a weight gain rather than a weight loss. According to the National Institute for Health, celiac disease is a digestive disease that damages the small intestine and interferes with the absorption of nutrients from food. People with celiac disease cannot tolerate gluten, which is a protein primarily found in wheat, rye, and barley. When people with celiac disease consume gluten, the immune system responds by destroying villi, which are fingerlike protrusions lining the small intestines. Villi allow nutrients from food to be absorbed through the walls of the small intestine into the bloodstream, and without healthy villi, a person will become malnourished no matter how much food he eats.

Celiac disease can have digestive symptoms, which are more common in children or infants. These symptoms include abdominal bloating and pain, diarrhea, vomiting, constipation, fatty stool, and weight loss. Adults are less likely to have digestive symptoms, but generally suffer from anemia, fatigue, bone or joint pain, arthritis, osteoporosis, depression or anxiety, numbness in the hands and feet, seizures, sores inside the mouth, and an itchy skin rash. Sometimes persons experience no overt symptoms, but can suffer long-term complications, including malnutrition, liver disease, and intestinal cancers. *See* http://digestive.niddk.nih.gov/ddiseases/pubs/celiac/index.htm.

While it is true that some of the symptoms about which Lopez complained mirror the digestive symptoms of celiac disease, this in itself does not show that Lopez actually suffers from that illness. As Dr. Behrns noted, another of the digestive symptoms of celiac disease is weight loss, because the disease can lead to malnutrition, but Lopez has not experienced weight loss; on the contrary, his weight went up by 21 pounds over a period of some 21 months, between March of 2006 and December of 2007. The fact that Lopez did not receive the testing or the treatment for celiac disease which he deemed appropriate does not show deliberate indifference to his serious medical needs. Norton, 122 F.3d at 293 (disagreement with treatment received does not equate to deliberate indifference).

6

Lopez also points to a refusal of treatment form which was apparently filled out by another inmate, Julio Lopez, but which was ascribed to him. However, he has not shown that this was anything more than negligence or carelessness on the part of prison officials resulting from the similarity of names. Although he complains that he could not get medical care after this refusal, the medical records show that Lopez did not file a sick call request to the medical department until August of 2007, over eight months after the refusal of treatment form was signed. He wrote to the mental health department in January, April, June, and July of 2007, during the time that he says that he was unable to get medical care, and complained about his mail being delayed, but made no mention of an inability to obtain medical care. When Lopez filed a sick call request in August, he was promptly scheduled and seen by the medical department, and when he filed a sick call request in December, he was seen by Dr. Behrns. Lopez has not shown that he was subjected to deliberate indifference through the inability to gain access to health care services. His claim on this point is without merit.

Lopez also named two unit wardens, Dawson and Currie, as defendants in his lawsuit. In his complaint, he says that Warden Currie told him that blood tests had been done and that he would only be rescheduled if these tests were positive, but the nurse told him that he had refused treatment. Once he got the refusal form and discovered that it had been done by Julio Lopez, he says that he wrote to Currie, but got no answer. Lopez also says that he wrote to Dawson, the head warden, and told him what had happened, but again received no answer. At the hearing, he testified that Warden Currie had answered his grievance and denied him relief. The TDCJ grievance records show that Currie answered a number of Step One grievances filed by Lopez, including grievances in November and December of 2006 complaining about his medical care.

The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *accord*, Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's

claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Lopez's claims against Warden Currie and Warden Dawson are in effect that these officials failed to investigate, denied his grievances, and did not respond to a letter which he wrote, none of which claims raise constitutional issues cognizable under Section 1983. These claims are without merit.

Next, Lopez complained that his food was being tampered with, although he does not appear to have sued anyone in connection with this claim. The Fifth Circuit has held that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986). No defendants were named with respect to this claim, and so no facts were enunciated setting out anyone's participation in this alleged wrong.

Furthermore, Lopez's claim of food tampering is purely speculative. This Court and others have held that speculative assertions of food tampering are not sufficient to support a constitutional claim. *See* Walzier v. McMullen, --- F.Supp.2nd ----, civil action no. H-06-2361 (S.D.Tex., March 13, 2008) (unpublished) (available on WESTLAW at 2008 WL 701371) (general assertions of belief that officers were contaminating the plaintiff's food with spit and other substances, in retaliation for his filing of grievances, did not set out a constitutional violation); Joiner v. Saunders, civil action no. 6:08cv104 (E.D.Tex., November 10, 2008) (unpublished) (available on WESTLAW at 2008 WL 4862553) (citing Walzier and holding that hearsay allegations of spitting in food did not set out a constitutional violation). Lopez's claim on this point is purely speculative and thus does not set out a viable claim under Section 1983.

At the evidentiary hearing, Lopez raised the issue of retaliation, saying that he believed that Moore retaliated against him because Moore got angry when he learned that Lopez had taken another inmate's medication. The Fifth Circuit has held that the elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is

a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, Lopez has plainly failed to set out a viable retaliation claim, because he has failed to show an intent to retaliate or that but for the alleged retaliatory motive, the incident complained of would not have occurred. Instead, Lopez has presented nothing more than his own personal belief that he has been the victim of retaliation. The Fifth Circuit has expressly held that a prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988). Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988). Lopez's retaliation claim consists wholly of conclusory allegations and expressions of personal belief, and consequently is without merit.

Finally, Lopez makes oblique references to mail tampering, although he does not name any defendants in connection with this assertion, nor even makes clear if he wishes this claim to be part of the lawsuit. As above, Lopez has not set out any facts illustrating any persons participation with this alleged wrong, and so his claim on this point is without merit. In addition, Lopez has offered nothing beyond sheer speculation to show that mail tampering is in fact occurring. The records of this case show that Lopez has filed an original complaint, three motions for appointment of counsel, five motions for injunctive relief, a motion for leave to proceed *in forma pauperis*, objections to a Report recommending denial of injunctive relief, a motion to continue with the case and for a hearing, an affidavit in support of the complaint, another motion for a hearing, a motion for a more definite statement and for the parties to submit to polygraph tests, a memorandum in support of injunctive relief, and three notices to the Court. It is clear that Lopez's mail to this Court, at least,

9

has not been tampered with and that he has enjoyed a considerable amount of access to court. In addition, the Fifth Circuit has held, in the context of legal mail, that isolated incidents of interference with mail do not amount to constitutional violations. *See* Richardson v. McDonnell, 841 F.2d 120, 122 (5th Cir. 1988). Lopez has not named any defendant in connection with any mail-tampering claim that he may wish to raise, nor has he shown that any such occurrences are anything more than isolated incidents. His claim on this point is without merit, and should be dismissed without prejudice.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Lopez's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED as frivolous without prejudice as to any claims of mail tampering which Lopez may have raised in this lawsuit,

and DISMISSED as frivolous with prejudice as to all other claims herein, including but not limited to Lopez's claims of denial of medical care, the wardens' responses to his grievances and letters, retaliation, and his claim of food tampering.  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **9**    day of   **December, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE